1

2

3

4

5

6

7

8

9

The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

| | |
|---|---|
| GEORGE F. KARL, III,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD V. SPENCER, SECRETARY OF THE NAVY,<br><br>Defendant. | No. 3:17-CV-05773-BHS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.      INTRODUCTION

Defendant has filed a motion for summary judgment as to the Plaintiff's claims. Plaintiff hereby responds and has submitted declarations and exhibits in support of this response.

## II.      FACTS

The Plaintiff, Mr. Karl, is a Navy veteran who served from 1983 to 1992, finishing his service as a sonar technician, first class. (Karl I Depo. p. 9) After the Navy, Mr. Karl pursued a career focused on electrical engineering. In 2006, he entered the federal service as a civilian employee at Naval Base Kitsap, working as an industrial control electronics mechanic. In 2008, he applied for a position as an engineering tech (ET) with a command within Navy Base Kitsap called NAVFAC, which was responsible for public works, and was hired. (Karl I Depo. p. 10-13) In NAVFAC, Mr. Karl's job was to

*Response to MSJ - 1*

❖ **GSJones Law Group, PS** ❖

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221❖Fax: (360) 876-5097**
**www.GSJoneslaw.com**

provide information and ongoing support regarding contracts between the Navy and contractors who were doing construction projects for the Navy. As an engineering tech (ET) in electrical engineering, he was typically assigned work on contracts involving electrical issues. (Karl I Depo. p. 17-25)

Around the same time that Mr. Karl was moving over to NAVFAC, he had volunteered to go to Afghanistan to be part of a team investigating the death of a soldier. Mr. Karl had worked with two other investigators. Of the three, Mr. Karl was the one who placed the blame for the incident on a group of construction battalion workers, known as CB's or, as they nick-name themselves, Seabee's. (Karl I Depo. p. 34-36)  During that trip, Mr. Karl had worked in a war zone, lived in a tent, and been on the receiving end of enemy fire. (Karl I Depo. p. 46-49) The other two participants received QSI (Quality Step Increase) awards for their service, but Mr. Karl, the only one who "blew the whistle" by stating that negligence by the CB's had been the cause of the service man's death, did not. Mr. Karl found that Mr. Murphy, who was in a position to assign him work, was a "Seabee," as was his supervisor, Mr. Herriot. Mr. Karl was accused of "throwing the Seabees under the bus." In December of 2013, when Mr. Herriot refused to nominate Mr. Karl for a QSI, he told Mr. Karl "You throw one Seabee under the bus, you throw us all under the bus." (Karl Depo. p. 17-25, 34-35)

Mr. Chris Murphy was the employee in the office who handed out tasks to the ET's like Mr. Karl. He has a gruff, demanding, aggressive demeanor in the office and is known to use profanity in his communications with the ET's. (Van Woudenberg Depo. p. 94-96) He particularly picked on an ET named Joe Harvey. Mr. Harvey had suffered a traumatic brain injury, and had resulting cognitive difficulties. Mr. Karl, in 2012, witnessed Murphy harassing Harvey about his disability and stood up for Mr. Harvey, confronting Murphy in the office and telling Harvey that he had the right to make a complaint to the EEO. (Karl I Depo. p. 37-39) Mr. Murphy responded by warning Karl to keep his nose out of Joe Harvey's business and quit encouraging him to file EEO complaints. (Karl I depo p. 54-56)

*Response to MSJ - 2*

◇ **GSJones Law Group, PS** ◇

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
Telephone: (360) 876-9221◇Fax: (360) 876-5097
www.GSJoneslaw.com

Eventually, Mr. Karl did help Mr. Harvey file an EEO complaint in January of 2014. Mr. Harvey was

assisted in this by Nora Williams, who was a union representative at the time. The EEO complaint was

was investigated by Ms. Werder. After Mr. Karl had provided an interview and written testimony to Ms.

Werder, the conclusion of the investigation resulted in Mr. Schilling (the _____), issuing Murphy

a verbal warning for humiliating Mr. Harvey. (Karl I Depo p. 32-33; Van Woudenberg Depo. p. 97-99)

At a later date, Mr. Van Woudenberg issued Murphy a two day suspension for the same type of

behavior, which Murphy using profanity towards ET's in the workplace. (Id. at 99)

Throughout the next few months, Mr. Karl was subjected to a series of negative employment related

situations. On January 23, 2014, LCDR Foster denied his request to attend training classes stating that

the classes were not within Mr. Karl's current field of work. (Karl I Depo. p. 60) On February 27, 2014,

shortly after Mr. Karl gave his testimony regarding Joe Harvey, he received an email from Mr. Coffee,

who reported that a waiver for overpayment that Mr. Karl had filed two years prior had to be re-

submitted. After making several inquiries, Mr. Karl finally determined that his management had

recommended denying the waiver. This would have resulted in collection efforts against Mr. Karl. (Karl

Depo. p. 62-64, 67-68) Mr. Karl found the timing of this odd issue to be indicative of a retaliatory

motive. (Id. at 64) Over the next few weeks, into March of 2014, Mr. Murphy reassigned six projects

from other ET's to Mr. Karl. (Dec of Johnson – Email of March 17, 2014; Karl Depo I, p. 69-71) Mr.

Karl was again, suspicious of Murphy's motive given the recent complaint regarding Mr. Harvey and

the proximity in time to the testimony that Mr. Karl had given against him . (Id.) He felt that Mr.

Murphy and Mr. Herriot were retaliating against him, but did not, at that time, make an EEO complaint.

In April of 2014, Mr. Herriot moved on and Mr. Van Woudenberg became Mr. Karl's new supervisor.

Mr. Karl had just applied for a new position and was concerned about what kind of reference the new

supervisor would give. Mr. Karl met with Mr. Van Woudenberg and told him that he was concerned

*Response to MSJ - 3*

◇ **GSJones Law Group, PS** ◇

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
Telephone: (360) 876-9221◇Fax: (360) 876-5097
www.GSJoneslaw.com

about retaliation and what Mr. Van Woudenberg may have been told about Mr. Karl. (Karl Depo. p. 78-80) Van Woudenberg was a little confused, but listened. (VanWoudenberg Depo. p. 12) As it turned out, Mr. VanWoudenberg was the deciding official for the lead tech position for which Karl was interviewing. (VanWoudenberg Depo. p. 16) Mr. Karl did not get the job. When he talked to Mr. VanWoudenberg about it, VanWoudenberg told Karl that Karl had not answered a question about the color of money well. (VanWoudenberg Depo. p. 20-23) Karl did not remember that question being asked and, knowing that the questions were on record. He was suspicious that his disclosing his EEO complaints to Van Woudenberg, who had a panel review but had the authority to choose against the panel's recommendation, had influenced the decision. (Karl I Depo. p. 81) Mr. Karl contacted a panel member by email asking for them. (VanWoudenberg Depo. p. 23)  Shortly thereafter, Mr. Murphy accused Mr. Karl of going to the cafeteria to get breakfast and asserted that there had been a rule against that in place from their former supervisor, Mr. Herriot. (Karl I Depo. p. 73-75) Mr. Karl asked for a meeting with VanWoudenberg, who said that his policy did not prohibit workers from going to the cafeteria, but from loitering in the cafeteria. Not willing to let it lie, Mr. Karl emailed Mr. Herriot to confirm that Mr. Herriot had never made such a policy and that Mr. Murphy was simply trying to stir up trouble for Mr. Karl by making that assertion. (Van Woudenberg Depo. p. 53) On May 3, 2014, Mr. Karl was presented with an assignment letter which was incorrectly written. Signing it could have put Mr. Karl in the position of being responsible for the mistake. Mr. Karl refused to sign it. (VanWoudenberg Depo. p. 24-27) A few months later, on July 29, 2014, Murphy assigned him another round of projects outside of his field of expertise. (Karl Depo. p. 93-94) On August 1, 2014, Mr. Karl was detained at the entrance to the base for hours and then cited with a federal violation of law for having a safety camera on his helmet. He had just observed another rider go through with a camera on his helmet and not get stopped. (Karl I Depo. p. 96-100) The guard told him that she had a memo to stop

*Response to MSJ - 4*

◇ **GSJones Law Group, PS** ◇

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◇Fax: (360) 876-5097**
**www.GSJoneslaw.com**

him for the camera violation. (Id.) Karl became suspicious that his command was behind the stop because he had been riding through that same gate with a camera on for years without response. Suddenly he was being stopped because there was a memo to stop him, not because there was any rule against wearing a camera which had been deactivated while entering the gate from the highway. (Karl Depo. p. 100-104, 106-111) Shortly thereafter, Van Woudenberg ordered Karl to a private meeting and insisted that it was not disciplinary. However the meeting had been called for Mr. Schilling to be able to verbally counsel Karl because Schilling claimed that Karl had muttered something under his breath at Schilling. (Van Woudenberg Depo. p. 99-102) Mr. Karl agreed to meet but only if his attorney were present, as he was facing the federal charge already. Mr. Van Woudenberg issued him a letter of caution for refusing to follow instructions. (Johnson Dec – Letter of Caution) On August 20, VanWoudenberg ordered Karl to perform escort duty for contractors on base. This took Mr. Karl away from his work at a crucial end of the fiscal year time period and caused him to be unable to complete some of his projects. (VanWoudenberg Depo. p. 27-28, 31) A couple months later, there was another round of projects outside of his area of expertise assigned by Murphy. This happened again at the end of November. As a result of being assigned a project that had already been headed towards failure, he was unable to complete it. (Karl Depo. 116-117)

Mr. Karl began to believe that Mr. Murphy and Mr. VanWoudenberg were trying to force him into situations where his performance would appear to be declining, or it would appear that he was breaking regulations, so that they could build a case against him for termination in retaliation for his having participated in the EEO complaint of Mr. Harvey, Ms. Williams, and Mr. McEvoy during roughly the same time periods. (Karl I Depo. p. 106) On December 24, 2014, he filed his own EEO complaint. He explained to the counselor about all of the events listed above (and some more) and told her that he had suddenly had an epiphany on December 23rd, putting it all together and concluding that he had been the

*Response to MSJ - 5*

◊ **GSJones Law Group, PS** ◊

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◊Fax: (360) 876-5097**
**www.GSJoneslaw.com**

victim of ongoing harassment and retaliation since the day he stuck up for Joe Harvey's rights against Murphy. The complaint specifically named Mr. Murphy, Mr. VanWoudenberg, Mr. Herriot, and Mr. VanCleave (the FOIA officer for NAVFAC) (Johnson Dec – Counselor's Report) Mr. Karl opted for Alternative Dispute Resolution and a mediation was set for March 25, 2015. (Id. at page 2/15/36 *note: there are three separate sets of page numbers in the ROI for each page*)

In January of 2015, Mr. Karl and about 13 other employees of Naval Base Kitsap (including Mr. McEvoy, Joe Harvey, and Nora Williams) all signed a letter, sent to Government officials, including United States Senator, Patty Murray. In the letter, the employees, including McEvoy, reported to the Senator that the civilian employees on the base were being subjected to retaliation and discrimination. (Johnson Dec – Murray letter) In response, on February 5, 2015, Senator Murray sent an inquiry and request for response to the Defendant. The response from the Navy to Senator Murray's inquiry came about a month later. On or about March 12, 2015, the Department of the Navy responded to Senator Murray's inquiry in writing, in the form of an undated letter, which was signed with in illegible signature of an employee purporting to be signing "for" Gwendolyn Crockett, Acting Director of the Navy's Assessment and Workforce Inquiries Division. In the letter, the Department of the Navy noted that the employees had access to the EEO, the Inspector General, and their respective Unions should they desire to have their concerns addressed. The letter went on to assure the Senator that "Beyond these administrative processes, the NAVFAC NW commanding officer continually encourages employees to raise issues up through their chain of command until resolution is reached." The Commanding Officer, at that time, was Capt. Mark Geronime. (Johnson Dec – Navy Response to Sen. Murray 3-15-19)

On March 25, 2015, the mediation of Mr. Karl's EEO complaint claims was a failure. Two days after the mediation, on March 27, 2015, Mr. VanWoudenberg presented Mr. Karl with a disciplinary counseling memorandum. (Johnson Dec – Counseling Memo 3-27-15) The memorandum was

*Response to MSJ - 6*

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
Telephone: (360) 876-9221◈Fax: (360) 876-5097
www.GSJoneslaw.com

disciplinary in nature. (VanWoudenberg depo. p. 44) In fact, it was the second step in a progressive

discipline policy. Mr. VanWoudenberg had opted to skip the first step, a verbal counseling specifically

because of Karl's past history of making complaints alleging that he was being retaliated against for

engaging in EEO activity. (Id. at 46,48) The counseling memo listed events going back to December of

2014, the exact time period at which Karl had had his epiphany and filed his EEO complaint. It

disciplined Mr. Karl for a list of activities, each and every one, an effort to obtain information relevant

to his EEO complaints. (Id. at p. 45) When he issued the memo, it was clear to Mr. VanWoudenberg that

Mr. Karl believed he was being retaliated against by management including VanWoudenberg, and that

Karl was reporting it (Id. at 49-50) The memo disciplined Karl for misuse of official time, alleging that

he misused his work time to write six emails to Mr. Herriot, asking about the cafeteria policy, to a panel

member on the lead tech interview to ask for a copy of the interview questions, and Mr. Schilling to ask

about the arrest for the camera. The emails were incredibly short, and, VanWoudenberg testified, could

not have taken more than seconds to write. (Id. at 56) The memo charged Karl with being disrespectful

when Karl had done nothing more than ask for information to be sent to him by a certain day, or asked if

he should request the information via FOIA, something VanWoudenberg admitted that every citizen has

a right to do. (Id. at 57-59) VanWoudenberg admitted that there was no use of any foul language, that

there was nothing inappropriate about Karl asking for the information, and that time use was not the real

reason for the discipline. (Id. 59-65) Instead, VanWoudenberg explained "I guess that fit the criteria of

pestering." (Id. p. 65-67) Although VanWoudenberg charged that Karl's comment that he would sue Mr.

Van Cleave, the FOIA officer, if he did not properly comply with FOIA requests as a "threat"

VanWoudenberg admitted that he had no idea how FOIA worked and whether a lawsuit was the proper

response to a federal FOIA officer who violated the law. He just took Van Cleave's complaint at face

value and disciplined Karl. (Id. at 68-71) Although Navy policy requires a "pre-action investigation"

*Response to MSJ - 7*

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◈Fax: (360) 876-5097**
**www.GSJoneslaw.com**

before considering discipline, VanWoudenberg never bothered to ask Karl for his side of any of the allegations before disciplining him. (Id. at 71) After making all of these admissions at his deposition in July of 2016, Mr. VanWoudenberg answered that, having reviewed it in that light, he had second thoughts about whether he should have issued the discipline. (Id. 71) despite this revelation, the Counseling memo was not removed from Mr. Karl's file. In fact, it was used as the basis to give him a 2 day suspension without pay the previous year. (Johnson Dec – Suspension proposal and decision)

Mr. Karl, suspicious that Mr. VanWoudenberg would not apply the same lack of investigation and meting out of discipline on Mr. Murphy under the same circumstances, tested the "misuse of time" allegation. He and Mr. Harvey reported to Mr. VanWoudenberg that Mr. Murphy had spent work time to doing things like pick up his boat and going to visit a Seabee monument.  Mr. Van Woudenberg testified that the asked Mr. Murphy about it and, when Murphy denied the allegations and said he had taken proper leave for the boat trip, Van Woudenberg simply took his word for it and dropped the matter entirely. (VanWoudenberg Depo. p. 105-107)

Karl continued to be plagued by "investigations" initiated by Mr. VanWoudenberg. In one instance, he was accused, by Mr. Schilling, of attending an Inspector General meeting on work time (May 26, 2015). He had been at lunch in the cafeteria when an IG group met there to have a discussion. Mr. Karl sat nearby and finished his lunch, listening in and then leaving when he was done with lunch. Mr. VanWoudenberg immediately called Mr. Karl in for an investigation, warning him that it was disciplinary in nature by offering to have a Union rep there. (VanWoudenberg Depo. p. 134, 138) Despite Mr. Karl's explanation and vehement allegation that this was part of ongoing retaliation, he disciplined Karl for it:

> Q137: Did the complainant complain to you about the alleged harassment as it pertains to this incident? If yes, when? What did he say? Did the complainant tell you he believed the harassment regarding this incident was based on his prior EEO activities?

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
Telephone: (360) 876-9221◈Fax: (360) 876-5097
www.GSJoneslaw.com

A: Yes- During my fact finding when I questioned his attendance.
Q138. What actions, if any did you or other management officials take in response to the complainant's allegation regarding this incident?
A: None- He was not authorized to attend the brief and was disciplined accordingly.

(Dec of Van Woudenberg p. 21 of 24; Van Woudenberg Depo. p. 74-81)

In May of 2015, when Karl submitted a request for be allowed to participate in a leadership program which would have benefitted his career, Van Woudenberg delayed responding until it was too late. (VanWoudenberg Depo. p. 84-85) When Karl submitted another request to participate in an Inspector general investigation, Van Woudenberg simply ignored it until eh opportunity had passed, thereby denying Mr. Karl the opportunity to earn extra pay and advance his career. (VanWoudenberg Depo. p. 8-90) After another investigation and a 2-day suspension, Mr. Karl felt beaten and asked to be transferred to any other location to get out of the hostile work environment. His supervisor refused and the Navy attorney wrote to him to let him know that if he were to agree to drop all of his EEO complaints, they could consider it. (Johnson Dec – Peck email 9-18-15)

During 2016, Mr. Karl's initial EEO complaint had progressed to a hearing stage and his attorney, on July 14, 2016, deposed Mr. VanWoudenberg, Chris Murphy, Meranda Jackson (the HR rep who had assisted in all of the adverse actions against Mr. Karl) and other witnesses in the case. The Navy's attorney deposed Mr. Karl on July 20, 2016. (Dec of Johnson) about three weeks later, on August 11, 2016, Mr. Karl received notice that he was going to be subjected to yet another investigation. This time, the Navy had hired an outside attorney who would be investigating Mr. Karl and Nora Williams (both of whom were, at the time represented by the undersigned). (Johnson Dec – notice of investigation 8-11-16) By this time, the Agency had already fired McEvoy for misconduct and his case was progressing against the Navy. The Navy spent $56,000.00 on Sam Vitaro, an accomplished attorney and authority on a book about how to conduct a federal investigation. The contract stated:

*Response to MSJ - 9*

◊ **GSJones Law Group, PS** ◊

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◊Fax: (360) 876-5097**
**www.GSJoneslaw.com**

| ITEM NO 0001 | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | | 1 | Each | $56,650.00 | $56,650.00 |
| | Expert services-investigation and mediat FFP | | | | |

NAVFAC NW requires the services of an Expert to support the Agency in anticipated litigation and disputes involving allegations of inappropriate workplace conduct by NAVFAC NW Public Works Department employees. Expert will provide investigative and such other expert services necessary to fully investigate the alleged inappropriate conduct and provide management with an investigative product to support any warranted administrative action and assist with any future litigation based on the subject matter of the investigation. Additionally, on a non-interfere basis with the primary tasking, expert will provide on the job training to one Agency investigator, who will be assigned to shadow the expert and assist with the subject investigation.
FOB: Destination

Mr. Karl requested counsel to represent him during the interrogation by the Navy's litigation attorney. The request was denied in an email stating "Because this is an administrative investigation you are not entitled to representation by counsel and counsel will not be allowed to be present during your interview." (Johnson Dec – Email of Aug 15, 2016) This, of course is just the opposite of what the United States Code says: ""a person compelled to appear in person before any agency or representative thereof is entitled to be accompanied, represented, and advised by counsel" 5 U.S.C. 555(b) During the hours long interview which went on despite his clear demand for representation to a lawyer who should have known the law on this issue (as he literally wrote the book on federal investigations, see Dec of Johnson – Conducting Misconduct inquiries : A guide for Federal Managers and Supervisors by Samuel A. Vitaro), he was accused of lying to a court, engaging in criminal acts, and a seemingly unending list of trivial encounters such as an email from a co-worker saying he found Karl to be abrasive in a conversation and an allegation that Karl smiled at another co-worker. (Johnson Dec – Vitaro interview)

Fortunately Mr. Karl had been spending his free time wisely by applying for jobs outside of NAVFAC. He was hired by another agency and left NAVFAC in November of 2016, before any discipline had been issued based on the Vitaro investigation. He has most recently accepted a position

*Response to MSJ - 10*

with NASA where, after one year as a GS-13, he will be eligible to apply for a GS-14 promotion to the deputy director position for NASA. Apparently, Mr. Karl, who has bene portrayed as an impossibly horrible human being by the Navy and it's attorneys in their summary judgment brief, either magically turned into a wonderful employee and human being upon leaving NAVFAC, or he was the victim of a pattern of harassment and retaliatory actions at NAVFAC, designed to create a false record upon which to hang charges of misconduct.

## I.    STANDARD OF REVIEW

### A.  Summary Judgment Standard

A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a), FRCP  "Judgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion." *Quiksilver, Inc. v. Kymsta Corp.,* 466 F.3d 749, 755 (9th Cir.2006) (internal quotation marks omitted). The Court is to consider the evidence and reasonable inferences which can be drawn from that evidence in a light most favorable to the non-moving party. If reasonable minds could differ, summary judgment should not be granted.

## III.    ARGUMENT

### A.  Plaintiff's claims

Mr. Karl has made one solitary, clear complaint from his first "epiphany" on December 23, 2014 to the present day. He has claimed that he has been subjected to retaliation for his participation in other people's EEO complaints, all of which were based on disability (the rehabilitation Act of 1973). Ms. Williams' and Mr. McEvoy's complaints have been before this Court. To establish a prima facie case of retaliation under the ADA/ Rehabilitation Act, an employee must show that: "(1) he or she engaged in a

*Response to MSJ - 11*

protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).  The ADA, and therefore the Rehabilitation act,  "outlaws adverse employment decisions motivated, *even in part*, by animus based on a plaintiff's disability or request for an accommodation—a motivating factor standard." *Head v. Glacier Nw. Inc.*, <u>413 F.3d 1053</u>, 1065 (9th Cir. 2005) (*abrogated on other grounds by Unit. Of Tex. Sw. Med. Ctr. v. Nassar*, <u>133 S. Ct. 2517</u>, 2533 (2013)) (emphasis added).

**B.  Evidence of Plaintiff's engaging in protected activities**

The record clearly shows that Mr. Karl began engaging in protected activities as early as 2012 when he stood up for Joe Harvey as Mr. Murphy humiliated and harassed him based on his disability (the cognitive results of a traumatic brain injury). The record shows that Mr. Karl helped Mr. Harvey initiate an EEO complaint and investigation which was carried out by Mr. Werder. Karl testified in the investigation. It resulted in Mr. Murphy being disciplined for humiliating Mr. Harvey with a reprimand, and later, as he continued with this kind of behavior, a two day suspension. Mr. Karl also gave statements and support to Nora Williams and Ed McEvoy in their EEO complaints though 2014 and into 2015. He filed his own EEO claim on December 24, 2014 and participated in a mediation on March 25, 2015. In the meantime, he signed a 13 employee petition to Senator Murray reporting discrimination and retaliation on the Navy base and asking their representative for help. Mr. Van Woudenberg testified that Mr. Karl was so vocal about reporting retaliation and harassment and pursuing his EEO claims that he issued him second stage progressive discipline as a result. Clearly, there is sufficient evidence in the record to satisfy the summary judgment standard of providing sufficient evidence from which a reasonable juror could find that Karl engaged in protected activities.

**C.  Which claims should be considered actionable in this case?**

*Response to MSJ - 12*

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◈Fax: (360) 876-5097**
**www.GSJoneslaw.com**

1

2     The defendant has put a lot of effort into trying to argue that complaints of any actions predating

3     November 7, 2014 should be considered time barred. The fact is, however, that this decision has been

4     taken out of the hands of the Court by the Defendant's own EEO department. In Mr. Karl's original

5     complaint, from December 24, 2014, the EEO counselor considered the timing issue, and accepted all of

6     the listed charges as part of a pattern of harassment and timely filed. Here is the portion of the initial

7     informal complaint which acknowledges that the report was made within 45 days and that there is no

8     timeliness issue:

9

10    Reason for delay beyond 45 days:   **N/A, contact was made within 45 calendar days.**

11    (Johnson Dec – Informal Counselor's report)

12    After that, when the Complaint progresses to the formal stage, the Defendant was tasked with making a

13    decision as to each allegation to determine whether it was within the jurisdiction of the EEO to

14    investigate. If it considered an allegation untimely filed, this is where that would be addressed. The

15    confirmation letter does dismiss some of the claims, specifically:

16

17        d.  The allegations raised in paragraphs 2.j., 2.k., 2.m,
          2.t., are all dismissed in accordance with 29 CFR §1614 107
18        (a)(1) for failure to state a claim.

19        4.  The allegations raised in paragraphs 2.a. through 2.i.,
          paragraph 2.l., paragraphs 2.n. through 2.s., along with paragraph
20        2.u. and 2.v. are acknowledged and forwarded for investigation.

21        5.  If you believe the acknowledged allegations are not correctly
          identified, please notify the EEO Office in writing at the below
22        address within seven calendar days of your receipt of this letter
          specifying why you believe the allegations are not correctly
          identified.  Your complaint must be limited to the claims
23        discussed with the EEO Counselor.  If you do not reply, I will
          consider the allegations stated above to be correct.

24        6.  Only the acknowledged portion of your claim of discrimination
          in your complaint will be formally investigated.  You will be

25    (Johnson Dec – Notice of acceptance of claims)

*Response to MSJ - 13*

This document was actually signed by Cpt. Geronime, who was the base commander and the highest authority the Agency had to offer. Those claims which the defendant accepted have been fully investigated and all administrative remedies exhausted. They are properly within the jurisdiction of the Court. Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," it does not matter that some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability. That act need not be the last act. Subsequent events may still be part of the one claim, and a charge may be filed at a later date and still encompass the whole. *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (S.Ct., 2002). See also Cherosky v, Henderson, 30 F.3d 1243, 1247 (9th Cir. 2003) (Claims based on a hostile environment are only timely where at least one act occurred during the limitations period). The Defendant concluded that this is the case and has exhausted administrative remedies on that theory back in 2015. Had Defendant denied the claims back then, Plaintiff would have had appeal remedies which are not available now. defendant should be estopped from claiming otherwise at this point.

**D.  Adverse employment actions**

**1.  The record contains evidence sufficient for a reasonable juror to find that there were several discreet adverse employment actions.**

The Ninth Circuit has a broad definition of an adverse employment action. "We define 'adverse employment action' broadly." *Ray v. Henderson,* 217 F.3d 1234, 1241 (9th Cir.2000); *see also Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir.2000) (collecting cases). In ADA retaliation cases, the Court has defined an adverse employment action as "any action 'reasonably likely to deter employees

*Response to MSJ - 14*

❖ **GSJones Law Group, PS** ❖

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221**❖**Fax: (360) 876-5097**
**www.GSJoneslaw.com**

from engaging in protected activity.' *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir.2000)." *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 (9th Cir., 2004) Even a warning letter of a negative review can be considered adverse employment actions. "A warning letter or negative review also can be considered an adverse employment action.." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840 (9th Cir., 2004) citing  *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987).

In this case, the record shows that many of the actions complained of could be considered adverse employment actions on their own. The denial of A quality Step Increase obviously denies the Plaintiff not only immediate pay but future increases in pay. A denial of a promotion denies him pay and a higher position. The March 27, 2015 counseling memo is clearly discipline. Mr. Van Woudenberg states that unequivocally in his deposition. See Van Woudenberg Depo. p. 44 He also states clearly, that he subjected Mr. Karl to discipline for the incident in which Mr. Karl finished his lunch while an IG meeting took place in the cafeteria:

Q132. The complainant is alleging the following incident of harassment on the basis of reprisal:
s. · On May 26, 2015, the complainant was questioned about being away from the work
place and attending an out brief by the inspection team following Inspector General
visit, which was being held in the building 1101 cafeteria.

To your knowledge, did this incident occur? If yes, please provide your role/involvement.
A: Yes- It was reported to me by LCDR Holzner and later by Mr. Schilling.
Ql34. Were you aware of who questioned the complainant about being away from the work
place? If yes, provide his/her name.
A:No.
Ql35. To your knowledge, was the out brief by the inspection team something the complainant
was authorized to attend?
A:No.
Q136. Do you believe that the complainant's prior EEO activities were a motivating or
contributing factor regarding the conduct he is complaining about? Why or why not?
A: No- Mr. Karl was not authorized to attend the meeting.
Q 13 7. Did the complainant complain to you about the alleged harassment as it pertains to this
incident? If yes, when? What did he say? Did the complainant tell you he believed the
harassment regarding this incident was based on his prior EEO activities?
A: Yes- During my fact finding when I questioned his attendance.
Q138. What actions, if any did you or other management officials take in response to the
complainant's allegation regarding this incident?
A: None- He was not authorized to attend the brief and was disciplined accordingly.

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◈Fax: (360) 876-5097**
**www.GSJoneslaw.com**

(Johnson Dec – Dec of Van Woudenberg)

The Vitaro investigation is so extreme an investigation that it must, at least as s summary judgment matter, be sufficient to fall within the scope of *Fonseca v. Sysco Food Services of Arizona, Inc.* and *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987).

### 2.  Hostile Work Environment

Hostile Work Environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the "unlawful employment practice," § 2000e-5(e)(1), cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See *Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 21. Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.,* at 23. To prevail on a hostile workplace claim a plaintiff must show that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995).

Plaintiff will not waste time and space in this brief repeating the facts as set forth above, but will incorporate the fact pattern in this argument. The record shows a very clear pattern of harassment here. Mr. Karl started this by helping other workers make EEO complaints by challenging misconduct on the part of Mr. Murphy. This was met with a clear tit-for-tat response as Murphy assigned Mr. Karl heavy workloads and made unfounded complaints about him. The more Karl investigated his complaints the more he was investigated back. The connection is beyond obvious. Mr. Van Woudenberg blatantly

*Response to MSJ - 16*

◈ **GSJones Law Group, PS**  ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
Telephone: (360) 876-9221◈Fax: (360) 876-5097
www.GSJoneslaw.com

admits that he was turning the complaints from the people that Karl was "pestering" for information to support his retaliation claim into constant investigations and allegations of misconduct. Van Woudenberg calmly explained his own disparate treatment by admitting that when the same type of allegations where raised against Murphy by Karl, he simply took Murphy's word that his misuse of government time was covered, or just dropped the matter.  Mr. Karl ultimately broke down and all but begged to be transferred to get out of the hostile work environment, only to have the Navy's attorney put it plainly. "While the command is not in a position to agree to anything at this time, we are willing to consider your proposals in the context of a potential settlement of your outstanding EEO complaint and MSPB appeal." Mr. Karl gets to the point where he is being investigated for smiling at someone and not saying good morning to someone else. He is denied counsel, illegally, by a lawyer who literally wrote the book on misconduct investigations and harangued for hours over minutiae like a co-worker who sent an email saying Karl was abrasive when they spoke the other day. Even Vitaro says that the command is exhausted with all the investigations. Certainly, it took its toll on Karl. The record supports a finding that there is evidence from which a reasonable juror could find that Karl was subjected to conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.

### E.  Evidence of causal links between protected activities and adverse employment actions

In this case there is direct evidence of causation. One has only to read the Van Woudenberg deposition. Mr. Van Woudenberg explains, candidly, that it was Karl's efforts to pursue his EEO claims which caused the investigations leading up to the disciplinary write up that Van Woudenberg issued. He could have been more clear. All of the continuing reports and efforts to pin allegations of misconduct on Mr. Karl fed through Mr. Van Woudenberg upon to the Vitaro investigation. As to the motive for that

*Response to MSJ - 17*

◆ **GSJones Law Group, PS** ◆

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◆Fax: (360) 876-5097**
**www.GSJoneslaw.com**

investigation, the contract itself states that it is in response to Mr. Karl's EEO complaint and that the Navy is paying Mr. Vitaro $56,000.00 to use this investigation to prepare for upcoming litigation. That is direct evidence of causation.

As for indirect evidence, timing is a clear indicator. Mr. Karl brought his allegations of discrimination on December 24, 2014. He opted for ADR. The mediation was held on March 25th and was not successful:

> 7.  Summary of resolution and/or ADR attempts.
>
> ADR was elected by the Aggrieved on 06 January 2015. Mediation held on 25 March 2015. Resolution was attempted; but not successful.

(Johnson Dec Counselor's report – informal complaint)

Mr. Van Woudenberg's admittedly retaliatory disciplinary action followed the failed mediation by TWO DAYS. In *Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir., 1987), the Court found that causation sufficient to establish the third element of the prima facie case for retaliation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 731-32 (9th Cir. 1986)

In *Hochstadt v. Worcester Found. for Experimental Biology, Inc.*, 425 F.Supp. 318, 324-25 (D.Mass.) the Court held that that discharge six months after EEOC settlement and a month after an informal complaint satisfies causation requirement), aff'd, 545 F.2d 222 (1st Cir.1976).

## F.  Evidence of pretext

The Plaintiff takes the position, in this case, that the shifting burden test is not applicable. As noted above, the ADA, and therefore the Rehabilitation Act, calls for a finding of liability where disability or participation in the RA process is a contributing factor to an employment action. Thus even if there were

*Response to MSJ - 18*

◇ **GSJones Law Group, PS** ◇

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
Telephone: (360) 876-9221◇Fax: (360) 876-5097
www.GSJoneslaw.com

a legitimate basis for the action in addition to the prohibited one, the case would still be decided in the favor of the Plaintiff on liability if a prima facie case had been made. Pretext, however, can be used to prove the Plaintiff's prima facie case as well. In *Mayes v. Winco Holdings, Inc.*, 846 F.3d 1274 (9th Cir., 2017) , the Court held An employee can prove pretext either: (1) "directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Fonseca v. Sysco *Food Servs. of Ariz., Inc.* , 374 F.3d 840, 849 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Lyons v. England* , 307 F.3d 1092, 1113 (9th Cir. 2002) ).

The Vitaro investigation cost the Navy. $56,000.00.  (Depo of Monie, Exh 9) The outrageous price alone, for an investigation of what appear to be relatively minor charges of misconduct should be sufficient to prove pretext. Although LCDR Pitcairn discussed the investigations of Mr. McEvoy, Ms. Williams, and Mr. Karl, claiming that the investigations into allegations about their "conduct" were unrelated to their EEO claims, he also admitted that no employee who had not been pursuing EEO claims against the Command had ever been subjected to a similar investigation. (Chan Dec, Exh T, page 5 of the exhibit) This shows disparate treatment. Likewise, Mr. Van Woudenberg' s admissions as to how he handled Karl and Harvey's reports (and legitimate reports) about Murphy using government time to p[pick up his private boat or visit a memorial are extremely telling. He simply asked Mr. Murphy about it. Murphy admitted to the boat but said he had used proper leave. Van Woudenberg said that he did not even bother to check to see if this was the case, which would have been simple. When asked about the trip to a monument, he said Murphy simply denied it and Van Woudenberg let the matter drop. Compare that to the zeal with which he pursued a claim that Mr. Karl spent part of his lunch time watching part of a public IG meeting that was taking place in the cafeteria and the disparate treatment

*Response to MSJ - 19*

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◈Fax: (360) 876-5097**
**www.GSJoneslaw.com**

becomes painfully obvious. The Court should consider this evidence as supporting a prima facie case of retaliation.

Although, as is discussed above, the ADA/Rehabilitation Act standard precludes the use of the shifting burden test, The shifting burden test is useful where the employer has been "caught in a lie" about why an adverse employment action was taken. In such cases, the pretextual assertion of the employer actually creates the evidence to support a prima facie case of discriminatory intent. In *Reeves v. Sanderson Plumbing Products*, 530 U.S. 13, 120 S.Ct. 2097 147 L.Ed. 2d 105 (2000), the Supreme Court stated that a jury's rejection of the defendant's proffered reason for termination will permit the trier of fact to infer the ultimate fact of intentional discrimination. Thus, proof that the defendant's explanation is unworthy of credence is evidence that is probative of intentional discrimination and, as the Court noted, it can be quite persuasive. See *id.* at 517. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. See, *e.g., Wright* v. *West,* 505 U.S. 277, 296, 120 L. Ed. 2d 225, 112 S. Ct. 2482. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp.* v. *Waters,* 438 U.S. 567, 577, 57 L. Ed. 2d 957, 98 S. Ct. 2943.

<u>Conclusion</u>

Mr. Karl, in his deposition points to his standing up for Joe Harvey against disability based humiliation and harassment from Mr. Murphy as "patient zero" for the onslaught of the trouble that found him after that at NAVFAC. The record presents clear and convincing evidence of the reason this all started, and one can easily follow each stage as Mr. Karl got further and further involved with helping others, and then pursuing his own EEO complaints, as he was, in turn, investigated and was met

*Response to MSJ - 20*

◈ **GSJones Law Group, PS** ◈

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221◈Fax: (360) 876-5097**
**www.GSJoneslaw.com**

with retaliation at each turn. He very clearly and loudly sounded the alarm just as soon as he recognized the pattern. Although that took him some time, when he did call it for what it was, the retaliation began to come back at him, blatantly, and hard. Mr. Karl has made one claim from the beginning. He was harassed and subjected to a hostile work environment and adverse employment actions by his supervisors and Mr. Murphy from the day he stood up for Joe Harvey and because he stood up for Joe Harvey, from day one until the day he left. Mr. Karl's ultimate resounding success both before and after his time with NAVFAC is proof that the Navy's allegations about him, that he is an obstreperous, rude, ne'er do well and a scourge to any work environment, just isn't true. The Plaintiff respectfully requests that the Court deny the Defendant's motion for summary judgment and allow this case to proceed to a jury trial where it can be decided on the merits.

s/Chalmers C. Johnson_____
CHALMERS C. JOHNSON, WSBA # 40180
Attorney for Plaintiff

Date: June 24, 2019

*Response to MSJ - 21*

**❖ GSJones Law Group, PS ❖**

**1155 Bethel Avenue**
**Port Orchard, Washington 98366**
**Telephone: (360) 876-9221❖Fax: (360) 876-5097**
**www.GSJoneslaw.com**